IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MELVIN ACEVEDO-HERNANDEZ,

Petitioner

v.                                            CIVIL 12-1763 (DRD)
                                              (CRIMINAL 10-310(DRD))

UNITED STATES OF AMERICA,

Respondent

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner, a police officer with the Police of Puerto Rico, was indicted on September 7, 2010 in six counts of a thirty-one count indictment charging drug and weapon violations. (Criminal No. 10-310 (DRD), Docket No. 2).  Eight other defendants, most of whom were also Police of Puerto Rico uniformed officers, were also indicted for similar or identical offenses.[1]  Petitioner was charged in Count Eight in that on or about April 8, 2009, Angel Torres Figueroa (a police officer then holding the rank of second lieutenant)  and he did knowingly and intentionally combine, conspire, confederate and agree together with each other

_____

[1]The involvement of police officers in drug conspiracies does not raise eyebrows in this district. See e.g. United States v. Bristol-Martir, 570 F.3d 29 (1st Cir. 2009); United States v. Caraballo-Rodriguez, 480 F.3d 62 (1st Cir. 2007); United States v. Sanchez-Berrios, 424 F.3d 65 (1st Cir. 2005); United States v. Serrano-Beauvaix, 400 F.3d 50 (1st Cir. 2005); United States v. Flecha-Maldonado, 373 F.3d 170 (1st Cir. 2004).

CIVIL 12-1763 (DRD)                    2
(CRIMINAL 10-310 (DRD))

and others, both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess with intent to distribute five (5) kilos or more of a mixture or substance containing a detectable amount of cocaine,  a Schedule II, Controlled Substance.   All in violation of 21 U.S.C. § 846   and 841(a)(1) & (b)(1)(A)(ii)(II). (Criminal No. 10-310 (DRD), Docket No. 2 at 5). Count Nine charges the same individuals with the substantive corresponding attempt offense, in violation of 21 U.S.C. § 846  and 841(a)(1) & (b)(1)(A)(ii)(II) and 18 U.S.C. § 2. (Criminal No. 10-310 (DRD), Docket No. 2 at 6).  Count Eleven of the indictment charges petitioner with knowingly possessing a firearm in furtherance of a drug trafficking crime as defined in Title 18 United States Code Section 924(c), that is, a violation of Title 21, United States Code, Sections 841(a)(1) and 846, involving a conspiracy and attempt to possess with intent to distribute five (5) kilos or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, as charged in Counts Eight and Nine of the indictment, an offense, either of which may be prosecuted in a court of the United States, all in violation of Title 18 United States Code Section 924(c)(1)(A). (Criminal No. 10-310 (DRD), Docket No. 2 at 7).  Petitioner was charged in Count Twelve in that on or about May 22, 2009, Jose Fuentes Fuentes (a police officer at the time) and he did knowingly and intentionally combine, conspire, confederate and agree together with each other and others,

CIVIL 12-1763 (DRD)                        3
(CRIMINAL 10-310 (DRD))

both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to possess with intent to distribute five (5) kilos or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II, Controlled Substance.  All in violation of 21 U.S.C. § 846  and 841(a)(1) & (b)(1)(A)(ii)(II). (Criminal No. 10-310 (DRD), Docket No. 2 at 7-8).   Count Thirteen charges the same individuals with the substantive corresponding attempt offense, in violation of 21 U.S.C. § 846  and 841(a)(1) & (b)(1)(A)(ii)(II) and 18 U.S.C. § 2. (Criminal No. 10-310 (DRD), Docket No. 2 at 8).  Count Fourteen of the indictment charges petitioner with knowingly possessing a firearm in furtherance of a drug trafficking crime as defined in Title 18 United States Code Section 924(c), that is, a violation of Title 21, United States Code, Sections 841(a)(1) and 846, involving a conspiracy and attempt to possess with intent to distribute five (5) kilos or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, as charged in Counts Twelve and Thirteen of the indictment, an offense, either of which may be prosecuted in a court of the United States, all in violation of Title 18 United States Code Section 924(c)(1)(A). (Criminal No. 10-310 (DRD), Docket No. 2 at 8-9).

Petitioner appeared before U.S. Magistrate Judge Bruce McGiverin on October 12, 2010 for arraignment and detention hearing and was subsequently detained pending trial.  (Criminal No. 10-310 (DRD), Docket No. 22).   Included

CIVIL 12-1763 (DRD)                    4
(CRIMINAL 10-310 (DRD))

among the reasons for his detention were petitioner's status as a law enforcement officer, background in weapons handling, a video of the defendant with a firearm at a drug transaction, and the strength of the government's case.   (Criminal No. 10-310 (DRD), Docket No. 37).   Four months later, on February 28, 2011, petitioner announced that a plea agreement had been reached with the government.   Petitioner entered a guilty plea on April 12, 2011 as to Count Eight and Eleven.   (Criminal No. 10-310 (DRD), Docket Nos. 150, 198).   He also admitted to the forfeiture allegation of the indictment.   In Count Eight, petitioner pleaded to an amount of cocaine which triggered a minimum statutory penalty of five years, instead of the penalty he faced as charged, which would have provided for a minimum term of imprisonment of ten years.   21 U.S.C. § 841(b)(1)(A); (Criminal No. 10-310 (DRD), Docket No. 199 at 5).   As to Count Eleven, the minimum statutory penalty is five years, with a maximum penalty of life.   Thus, the minimum penalty petitioner could receive under the agreement was ten years or 120 month imprisonment, since 18 U.S.C. § 924 (c)(1)(D)(ii) requires a sentence to be served consecutively to that of the predicate drug offense.

Petitioner filed a comprehensive 16-page sentencing memorandum on September 6, 2011. (Criminal No. 10-310, Docket No. 284).  Petitioner specifically implored the court to impose the lowest possible sentence possible, relying on the sentencing factors in 18 U.S.C. § 3553 and United States v. Booker, 543 U.S. 220

CIVIL 12-1763 (DRD)                    5
(CRIMINAL 10-310 (DRD))

(2005).  He also objected to parts of the report and proffered certain mitigating factors.

As a result of the court's abiding by the plea agreement, petitioner was sentenced on September 22, 2011 to 120 months imprisonment.   (Criminal No. 10-310 (DRD), Docket No. 317).   Consistent with the terms of his plea agreement, petitioner did not  file a notice of appeal.   None of the other defendants proceeded to trial.  Of those receiving terms of imprisonment that I am aware of, sentences ranged from a high of 150 to a low of 72 months.

Petitioner pro se moved to reduce his 120-month imprisonment  sentence based on retroactive application of sentencing guidelines pursuant to 18 U.S.C. § 3582(c)(2)  on December 19, 2011.  (Criminal No. 10-310 (DRD), Docket No. 359).  By order of the court, the motion was denied on February 4, 2012, since his conviction was based upon cocaine and not cocaine base or crack cocaine. (Criminal No. 10-310 (DRD), Docket No. 373).

II. 28 U.S.C. § 2255

This  matter is before the court on motion filed by petitioner on September 14, 2012 to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1).  The government filed a response in opposition to the motion on January 14, 2013.  (Docket No. 10).

CIVIL 12-1763 (DRD)                           6
(CRIMINAL 10-310 (DRD))

Having considered the arguments of the parties and for the reasons set forth below, I recommend that the petitioner's motion to vacate sentence be DENIED.

Petitioner claims that he suffered ineffective assistance of counsel since the plea agreement was explained to him at the prison in a rushed manner and for only five minutes, on March 17, 2011. (Docket No. 1). He stresses that to this day, he is not fluent in English and that the plea agreement was not explained to him nor was it read to him. He was not provided with a copy of the plea agreement in the Spanish language. (Plea agreements are not commonly written in the Spanish language.) Petitioner notes that the U.S. magistrate judge before whom he pleaded guilty asked counsel if he had read the agreement to his client in the Spanish language but no such inquiry was made of him directly. (Docket No. 1 at 3). Petitioner argues that nowhere in the magistrate judge's explanation is it explained that the two sixty-month sentences are mandatory in nature, as a bare minimum, and that the guideline range of 57-71 months he refers to could not be regarded considering the statutory minimum sentence of sixty months. Petitioner argues that the magistrate judge strongly implied that the sentence would be controlled by the guidelines. (Docket No. 1 at 4). Petitioner also complains that his attorney did not visit him to review the presentence report nor for any other reason. None of these arguments are developed.

CIVIL 12-1763 (DRD)                         7
(CRIMINAL 10-310 (DRD))

Given the above background, petitioner argues that the only possible co-conspirator was not criminally culpable since he was then working as an informant.  (Docket No. 1 at 5).   He argues further that because there was no predicate felony, (since he cannot conspire with someone who is not criminally culpable),  there was no violation of 18 U.S.C.  § 924(c).  Furthermore, petitioner thought he was protecting gold sale transactions and that when he got to the scene, he learned the protection was for cocaine sales,  not gold sales. (Docket No. 1 at 5).

Petitioner's second ground for relief is based upon the argument that his criminal exposure was unconstitutionally enlarged through sentence factor manipulation.  He details how he was set up based upon his knowledge acquired as a police officer, and his having a weapon, which the informant asked to see to make sure that a weapon was present, and thus assure an enhanced penalty. (Docket No. 1 at 7).  He argues that there is nothing in the record to show that he was predisposed to carry a weapon during the commission of this felony and that he carried it because he was asked to do so by the informant.

Finally, petitioner argues that he received inadequate representation of counsel because counsel failed to raise or preserve meritorious and important issues, such as sentence manipulation and lack of culpability.   Based on his

CIVIL 12-1763 (DRD)                                    8
(CRIMINAL 10-310 (DRD))

representations, he stresses that he is entitled to a judicial dialog through an

evidentiary hearing.

On January 14, 2013, the government filed a response in opposition to the

petitioner's motion arguing basically that it should be summarily denied because

his allegations are unsubstantiated by the record and are directly contradicted by

the same record.  (Docket No. 10).   The government summarizes the actions of

petitioner and another former police officer as their having agreed to provide

protection for a person who they thought was a drug trafficker and in relation to

what they believed was a drug deal.  The operation was actually a simulated drug

transaction involving sham cocaine,  carried out by government informants and

law enforcement officers. (Docket No. at 2).   The sham transaction took place on

April 8, 2009, petitioner was armed, and each police officers received $2,000 for

the protection.   The government notes that the plea agreement provided for a

reduced drug quantity as stipulated, that the salient details of the agreement were

explained to petitioner during the plea colloquy, and that the court followed the

recommendation at sentencing.  The government finds it curious that petitioner

now attacks or at least ignores the plea agreement where he stipulated the

evidence which he now contests, and where he further agreed that he would not

seek any variances from the sentence if the agreement were followed by the

court.   Indeed, it highlights that any action by counsel contrary to the plea

CIVIL 12-1763 (DRD)                    9
(CRIMINAL 10-310 (DRD))

agreement would have vitiated the same, and that petitioner has procedurally defaulted on these claims by not having presented them to the trial court first nor on appellate review.

The government relies on the plea colloquy to stress that petitioner's allegations are clearly contradicted by the record.  Specifically, petitioner clearly admitted that he had had a reasonable opportunity, prior to the hearing, to discuss with counsel the terms and conditions of the plea agreement.  Petitioner also admitted at that hearing that he understood the explanation as to the terms and conditions of the same.  Defense counsel confirmed  his having translated and explained the plea agreement to petitioner prior to the hearing.  Petitioner also was aware of the consequences of waiving his right to appeal.   The government focuses on the issue related to the knowledge of the consecutive minimum 60-month sentences and that petitioner acknowledged that the imposition of sentence in Count Eleven must be consecutive to the sentence imposed in Count Eight. This aspect of the plea agreement is further contained in page 2 of the agreement.

The government addresses defense counsel's sagacity in not raising issues of sufficiency of evidence and sentencing manipulation at the trial level or on appeal since these would have been a material breach of the terms of the plea agreement.   The sufficiency of the evidence argument is easily parried since by

CIVIL 12-1763 (DRD)                    10
(CRIMINAL 10-310 (DRD))

its very wording, it is clear that petitioner is charged with, and admits to, conspiring with co-defendant Torres-Figueroa, a fellow Police of Puerto Rico police officer of higher ranking who also pleaded guilty.   Similarly the government argues that making an issue of sentence manipulation would have breached the plea agreement.

### III.  ANALYSIS

Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-27 n.3 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  The burden is on the petitioner to show his or her entitlement to relief under section 2255, David v. United States, 134 F.3d at 474, including his or her entitlement to an evidentiary hearing.  Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).  Petitioner has sought such an evidentiary hearing to pursue a judicial dialog.   It has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts

CIVIL 12-1763 (DRD)                    11
(CRIMINAL 10-310 (DRD))

by the files and records of the case." United States v. McGill, 11 F.3d at 226 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)). "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" United States v. McGill, 11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)).

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence."  U.S. Const. amend. 6.  To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and that the deficiency prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). "This inquiry involves a two-part test." Rosado v. Allen, 482 F. Supp. 2d 94, 101 (D. Mass. 2007). "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Id. (quoting Strickland v. Washington, 466 U.S. at 690.) "This evaluation of counsel's performance 'demands a fairly tolerant approach.'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994)). "The court must apply the performance standard 'not in hindsight, but based on what

CIVIL 12-1763 (DRD)                    12
(CRIMINAL 10-310 (DRD))

the lawyer knew, or should have known, at the time his tactical choices were made and implemented.'"  Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991)).  The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland v. Washington, 466 U.S. at 689).  "Second, a defendant must establish that prejudice resulted 'in consequence of counsel's blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."'"  Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d at 8) (quoting Strickland v. Washington, 466 U.S. at 694); see  Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland v. Washington, 466 U.S. at 688): Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996); Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994); López-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990) (citing Strickland v. Washington, 466 U.S. at 687); Mattei-Albizu v. United States, 699 F. Supp. 2d 404, 407 (D.P.R. 2010). However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  Argencourt v. United States, 78 F.3d at 16 (quoting Strickland v. Washington, 466 U.S. at 691).  Thus, "[c]ounsel's actions are to be

CIVIL 12-1763 (DRD)                    13
(CRIMINAL 10-310 (DRD))

judged 'in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law.'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d at 15).  The defendant bears the burden of proof for both elements of the test.  Cirilo-Muñoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005), cert. denied, 525 U.S. 942 (2010), (citing Scarpa v. DuBois, 38 F.3d at 8-9).

     In Hill v. Lockhart the Supreme Court applied Strickland's  two-part test to ineffective assistance of counsel claims in the guilty plea context.  Hill v. Lockhart, 474 U.S. 52, 58 (1985) ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."); Torres-Santiago v. United States, 865 F. Supp. 2d 168, 178 (D.P.R. 2012).  As the Hill Court explained, "[i]n the context of guilty pleas, the first half of the Strickland v. Washington test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases].  The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. at 58-59.  Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

CIVIL 12-1763 (DRD)                    14
(CRIMINAL 10-310 (DRD))

## B.  PLEA AGREEMENT

It is difficult to ignore the fact that the plea agreement was exactly what was negotiated and petitioner, an obviously intelligent and higher-educated person (Associate's Degree in Criminal Justice), as well as a person with specialized knowledge attributed to law enforcement officers, was sentenced in accordance with the same.   Petitioner was well aware of the evidence he was facing if he had chosen to proceed to trial, evidence which included video recordings of his participation in similar agreements to violate the law with different felonious players as actors.  Had he chosen to proceed to trial on all charges, and had he been found guilty, he would have faced two minimum consecutive terms of imprisonment in the weapons violations,  (Counts 11 and 14), 18 U.S.C. § 924 (c)(1(A), in accordance with the provisions of 18 U.S.C. § 924 (c)(1(D)(ii), in addition to minimum consecutive terms of imprisonment of ten years in the narcotics counts, (Counts 8 and 12), 21 U.S.C. § 841(b)(1)(A).

With the above as background, there is no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness as to communicating the nature of the plea agreement to him, nor does the record support that but for the alleged errors by the attorney, petitioner instead of pleading guilty would have proceeded to trial. Petitioner's poor knowledge of the English language is hardly a factor to consider

CIVIL 12-1763 (DRD)                        15
(CRIMINAL 10-310 (DRD))

when simultaneous translation is the order of the day in this district, and when his own allegation is controverted by his own admissions at the change of plea hearing.  Under oath, although not in so many words, it appears that petitioner was satisfied with the services of his attorney.   (Criminal No. 10-319 (DRD), Docket No. 199 at 13-14).  In the plea agreement, petitioner was satisfied with the services of his attorney. (Criminal No. 10-319 (DRD), Docket No. 199 at 5). One week before the tolling period for collateral review would have run its course, petitioner registered his change of heart regarding his opinion of his attorney's services.

Statements were made by defense counsel at the plea hearing, and petitioner did not protest any of them.  His answers there are at loggerheads with his protestations here.   "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)); see Nieves-Ramos v. United States, 430 F. Supp. 2d 38, 43 (D.P.R. 2006); Caraballo Terán v. United States, 975 F. Supp. 129, 134 (D.P.R. 1997). Petitioner was under oath, understood the sentence recommendation, and overlooks the fact that his attorney negotiated a favorable plea agreement with

CIVIL 12-1763 (DRD)                    16
(CRIMINAL 10-310 (DRD))

the government in a case which welcomed a higher sentence based upon the condemnable activity of guardians of the law no less, and if one considers what sentence he might have received after trial or after a straight plea, petitioner could have faced a much longer sentence, and assuredly would have received one.

   In any event, it is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (quoting United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." Torres-Quiles v. United States, 379 F. Supp. 2d 241, 248-49 (D.P.R. 2005) (citing United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements . . . unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." United States v. Butt, 731 F.2d at 80 (citing Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). Because of the wide range of tactical

CIVIL 12-1763 (DRD)                    17
(CRIMINAL 10-310 (DRD))

decisions that a criminal defense attorney may be presented with in any given trial, judicial scrutiny of the attorney's performance must be "highly deferential" and indulge a strong presumption that the challenged action "might be considered sound trial strategy." Strickland v. Washington, 466 U.S. at 689.  Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effect of hindsight . . . . " Id.

In relation to a motion to vacate sentence, ordinarily the court would have to "take petitioner's factual allegations 'as true,'" however it will not have to do so when like in this case "'they are contradicted by the record . . . and to the extent that they are merely conclusions rather than statements of fact.'" Otero-Rivera v. United States, 494 F.2d 900, 902 (1st Cir. 1974) (quoting Domenica v. United States, 292 F.2d 483, 484 (1st Cir. 1961)).

As to other allegations where the United States magistrate judge did not inform petitioner that the guidelines would not apply over the mandatory minimum sentences, or that counsel was addressed but the silent, college-educated petitioner was not, if one reviews the transcript of the plea colloquy, it is clear that the court addressed the traditional Rule 11 core concerns, that is, that it instructed the petitioner as to the nature of the charges, the consequences of his pleading guilty, including the possible sentence that petitioner would be facing, and the absence of coercion, that is, the voluntariness of the guilty plea.

CIVIL 12-1763 (DRD)                    18
(CRIMINAL 10-310 (DRD))

See United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995); Nieves-Ramos v. United States, 430 F. Supp.2d 38, 43-44 (D.P.R. 2006).   Petitioner's unfocused nitpicking does not raise a concern of constitutional consequence and does not relate facts sufficient to trigger the extraordinary remedy which is currently being sought.  That remedy is two-fold: vacatur of conviction or evidentiary hearing and then vacatur of conviction.

### C. CONSPIRACY THEORY

Petitioner argues that no crime was committed since he could only conspire with one person and that person was an informant.   He makes reference to the drug conspiracy as a wheel conspiracy with the government agent at the hub.  He argues that he agreed to work not with his actual supervisor (a now convicted police officer) but with a person which he is now aware was a government agent at the time.   Thus there was no conspiracy and therefore no surviving consecutive 18 U.S.C. § 924(c) conviction.   Indeed, his statements are so exculpatory that he wishes the court to vacate the conviction.

The fatal flaw in petitioner's argument is that there was no government agent at the hub of this conspiracy, unless the hub is of petitioner's *post haec* invention.  Whether the description fits under chain, hub[2], or hub and wheel or

---

[2]See United States v. Pacheco, 434 F.3d 106, 114 (1st Cir. 2006).

CIVIL 12-1763 (DRD)                    19
(CRIMINAL 10-310 (DRD))

spoke[3] conspiracy, petitioner agreed with another police officer (his immediate police superior) in this reverse sting operation to provide protection to purported drug dealers.  Agreement is the essence of conspiracy.  This narrow conspiracy was similar to others charged similarly in the same indictment in relation to transactions occurring on different dates.   A conspiracy can have as little as two participants.  See e.g. Kotteakos v. United States, 328 U.S. 750, 756 (1946). The indictment charged eight separate conspiracies with Angel Torres Figueroa at the hub of four of them, or at least a participant in each of those four. (Criminal No. 10-310, Docket No. 2 at  2, 3-4, 5, 17).  In the plea agreement, petitioner agrees that he conspired with Angel Torres  Figueroa to possess with the intent to distribute five kilograms or more of a detectable amount of cocaine.  (Criminal No. 10-310, Docket No. 199 at 2).  He was held accountable for a smaller amount of cocaine nevertheless.  These two defendants arrived at a villa in Dorado, Puerto Rico on April 8, 2009 to provide armed protection for the seller in a drug transaction.   When the first buyer arrived, petitioner patted him down as co-defendant Torres-Figueroa watched. (Criminal No. 10-310 (DRD), Docket No. 199 at 12).  The same happened when the second buyer arrived.  Petitioner and Torres-Figueroa  guarded the seller while the buyers inspected the sham cocaine.

---

[3]See United States v. Franco-Santiago, 681 F.3d 1, 11 (1st Cir. 2012); United States v. Niemi, 579 F.3d 123, 127 (1st Cir. 2009).

CIVIL 12-1763 (DRD)                    20
(CRIMINAL 10-310 (DRD))

The modus operandi of all conspiracies was generally similar except that the amount of the payments for protection to the policeman varied.  There were also insignificant variances.  For example, one defendant might check a door to make sure it is locked, and another defendant might have provided intelligence as to the presence of other policemen on duty. In any event, petitioner initialed each page of the plea agreement and signed the same.  It taxes credulity that he would now deny in an unattested motion what he swore was correct, that is,  under oath,  at the change of plea hearing. (Criminal No. 10-310, Docket No. 402 at 2, 24-26).

Furthermore, petitioner should have raised these issues with the district court directly instead of launching a collateral attack long after the district court might have fashioned some unknown remedy.  Notwithstanding the waiver of the right to appeal, if there was a violation of the plea agreement or if there was no culpable co-conspirator, a fact which had to be known to petitioner prior to the change of plea hearing, petitioner might have filed a timely notice of appeal rather than proceed post-script.  At that time he knew that his preferred co-conspirator was working as a law enforcement agent and did not possess the necessary *mens rea* to commit the offense of conspiracy.  This knowledge would be known not only from discovery but also from petitioner's education, training and experience.   He said nothing.  He did nothing.

CIVIL 12-1763 (DRD)                    21
(CRIMINAL 10-310 (DRD))

         A significant bar on habeas corpus relief is imposed when a
    prisoner did not raise claims at trial or on direct review.  In such
    cases, a court may hear those claims for the first time on habeas
    corpus review only if the petitioner has "cause" for having
    procedurally defaulted his claims, and if the petitioner suffered "actual
    prejudice" from the error of which he complains.

    United States v. Sampson, 820 F. Supp.2d 202, 220 (D.Mass. 2011), citing

Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007), also citing Oakes v.

United States, 400 F.3d 92, 95 (1st Cir. 2005) ("If a federal habeas petitioner

challenges his conviction or sentence on a ground that he did not advance on

direct appeal, his claim is deemed procedurally defaulted."   To obtain collateral

relief in this case, petitioner must show cause excusing his double procedural

default and actual prejudice resulting from the errors he is complaining about.

See United States v. Frady, 456 U.S. 152, 167-68 (1982).   Petitioner has shown

neither.

         D. SENTENCE MANIPULATION: THE REVERSE STING OPERATION

         Petitioner was hired to protect a drug shipment and it was not unusual to

be asked to carry a weapon in furtherance of protecting the drug load.   Because

of that request, he alleges that the government manipulated his sentence.

However, he was not threatened by government agents and there was no

excessive   pressure   by   such   agents   necessary   to   establish   government

overreaching to the point of manipulation.  See e.g. United States v. Guevara, slip

CIVIL 12-1763 (DRD)                            22
(CRIMINAL 10-310 (DRD))

op. No. 11-2083, 2013 WL 310392 (January 23, 2013 at *7).    Indeed, his

argument is clearly frivolous if one reviews the law in this circuit on this particular

issue.

> Impermissible sentencing factor manipulation can justify a downward
> departure from the sentencing guidelines (or from any applicable
> statutory minimum). See [United States v.] Villafane-Jimenez, 410
> F.3d [74,] 87; United States v. Connell, 960 F.2d 191, 194 (1st Cir.
> 1992).  Withal, such manipulation occurs only when the authorities
> 'venture outside the scope of legitimate investigation and engage in
> extraordinary misconduct that improperly enlarges the scope or scale
> of the crime'.  United States v. Barbour, 393 F. 3d 82, 86 (1st Cir.
> 2004).  The facts in this case do not show anything beyond the level
> of manipulation inherent in virtually any sting operation-and that is
> not enough to warrant a downward departure. See Connell, 960 F.2d
> at 194.
>
> United States v. Sanchez-Berrios, 424 F.3d at 78-79 (1st Cir. 2005).

The analogy applies whether petitioner seeks dismissal of the weapons

count or a downward departure.  The court continued: "[T]he government did not

lure the appellants into committing crimes more heinous than they were

predisposed to commit." Id. at  79.  I do not discuss the issue of waiver in depth,

although it looms heavily in terms of procedural default,  because this case in this

particular court is just another police focused, garden variety reverse sting

operation. See United States v. Bristol-Martir, 570 F.3d at 34-35.  The modus

operandi is the same in all.  It is clear then that the petitioner was adequately

CIVIL 12-1763 (DRD)                    23
(CRIMINAL 10-310 (DRD))

represented by his attorney as to this factor, and that his argument is at best

meritless, and at worst frivolous.

IV.  CONCLUSION

"Under Strickland v. Washington, . . . counsel is not incompetent merely

because he may not be perfect.  In real life, there is room not only for differences

in judgment but even for mistakes, which are almost inevitable in a trial setting,

so long as their quality or quantity do not mark out counsel as incompetent."

Arroyo v. United States, 195 F.3d 54, 55 (1st Cir. 1999).  Petitioner has not

satisfied the first prong of Strickland.  There were no errors of defense counsel

that resulted in a violation of petitioner's right to adequate representation of

counsel under the Sixth Amendment.

In view of the above, I find that petitioner has failed to establish that his

counsel's representation fell below an objective standard of reasonableness.  See

Strickland v. Washington, 466 U.S. at 686-87; United States v. Downs-Moses, 329

F.3d 253, 265 (1st Cir. 2003).  Indeed, it is impossible to find that any claimed

error has produced "'a fundamental defect which inherently results in a complete

miscarriage of justice' or 'an omission inconsistent with the rudimentary demands

of fair procedure.'"  Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994)

(quoting Hill v. United States, 368 U.S. at 428).  This includes petitioner's ignoring

CIVIL 12-1763 (DRD)                          24
(CRIMINAL 10-310 (DRD))

the 60-month minimum sentence for the conspiracy conviction when informed of

the sentencing guideline range of 57-71 months.

Federal habeas relief is reserved only for the poorest performances. <u>Torres-</u>

<u>Santiago v. United States</u>, 865 F. Supp. 2d at 190.  Such poor performance is

lacking here except in the belief of the petitioner. "Men willingly believe what they

wish." Julius Caesar, "<u>De Bello Gallico</u>", I. iii. 18.   This petition is meritless as is

apparent from a reading of the change of plea transcript as well as the sentencing

memorandum and the result of the plea negotiations.   The sentencing judge is

not known to place an imprimatur on plea agreements presented under Federal

Rule of Civil Procedure 11(c)(1)(B).  The thoughtful sentencing memorandum,

replete with sentencing factors, written by an experienced former federal

prosecutor, urged the sentencing judge to follow the recommendation of the plea

agreement.

In view of the above, I recommend that petitioner's motion to vacate, set

aside, or correct sentence under 28 U.S.C. § 2255 be DENIED without evidentiary

hearing and judicial dialog.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any

party who objects to this report and recommendation must file a written objection

thereto with the Clerk of this Court within fourteen (14) days of the party's receipt

of this report and recommendation.   The written objections must specifically

CIVIL 12-1763 (DRD)                    25
(CRIMINAL 10-310 (DRD))


identify the portion of the recommendation, or report to which objection is made

and the basis for such objections.   Failure to comply with this rule precludes

further appellate review.   See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet

v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass.

Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health

& Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).

          At San Juan, Puerto Rico, this 21st day of February, 2013.


                              S/JUSTO ARENAS
                         United States Magistrate Judge

CIVIL 12-1763 (DRD)                    26
(CRIMINAL 10-310 (DRD))